UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON TODD, | : | Civil No. 1:25-CV-1337 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DISABILITY RIGHTS | : | |
| PENNSYLVANIA, | : | |
| et al., | : | (Magistrate Judge Carlson) |
| | : | |
| Defendants. | : | |

MEMORANDUM OPINION

I.   Statement of Facts and Procedural History

This case comes before us for a legally mandated screening review of the plaintiff's amended complaint. (Doc. 17). The *pro se* plaintiff, Jason Todd, has recently filed a spate of lawsuits in this Court, including the instant case.[1] Todd's initial complaint was a cryptic document drafted in a stream of consciousness style which presumes some vast pre-existing knowledge on the reader's behalf of other unrelated events.

In this pleading, Todd sued a disability rights organization, Disability Rights Pennsylvania, (DRP), and the Pennsylvania Human Relations Commission, (PHRC),

---

[1] Todd v. Derry Township, 1:25-cv-435; Todd v. Commonwealth, 1:25-cv-1336; Todd v. Disability Rights of Pennsylvania, 1:25-cv-1337.

1

an agency of state government, along a number of officials affiliated with these two organizations. The meager factual recital which followed in support of the complaint alleged that Todd submitted "sealed trauma and VA medical documentation (Doc. 283) to federal court" following some altercation at a VA facility in September of 2024. (Doc. 1, at 4). What this documentation may be, or what the nature of this altercation was, remained a mystery since nothing was included in the original complaint which provided further content, context, or coherence to this pleading. Todd then stated that he also provided otherwise unidentified "formal complaints, trauma filings and international oversight notice[s]" to the DRP and the PHRC between February and July 2025, but they closed his complaints. (Id., at 5).

On the basis of this barebones factual recital, Todd then alleged in a cursory manner that the defendants have violated the Americans with Disabilities Act, 42 U.S.C. §12203; the general civil rights statute, 42 U.S.C. §1983; the Protection and Advocacy for Individuals with Mental Illness Act, (PAIMI) 42 U.S.C. §§10801-10805; the Supremacy Clause, Due Process Clause, and Equal Protection Clauses of the United States Constitution; and engaged in negligent misrepresentation. (Id., at 6). Relying upon these enigmatic averments, Todd demanded $20,000,000 in damages; sweeping declaratory and injunctive relief; the removal of officials from their jobs; and the appointment of a "federal trauma monitor." (Id.)

Todd was granted leave to proceed *in forma pauperis* subject to a screening review of this complaint and also filed a pleading consenting to proceed before a magistrate judge. (Doc. 9). Therefore, since no other party has been served, for screening purposes we have sufficient party consent to proceed. See Neals v. Norwood, 59 F.3d 530, 532 (5th Cir. 1995). However, upon a legally mandated screening review of this pleading we dismissed the complaint without prejudice to affording Todd a final opportunity to file an amended complaint which stated a claim upon which relief may be granted. Todd has now filed an amended complaint which names Disability Rights Pennsylvania, (DRP), and the Pennsylvania Human Relations Commission, (PHRC), as defendants and repeats in a summary fashion his allegations that the failure of these entities to act favorably upon his complaint about others constituted retaliation in violation of the ADA and his constitutional rights. (Doc. 17).

Upon consideration, for the reasons set forth below, the amended complaint will be dismissed.

    **II.    Discussion**

        **A. Screening of *Pro Se* Complaints–Standard of Review**

This Court has an ongoing statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis*. See 28 U.S.C. § 1915(e)(2)(B)(ii). Specifically, we are obliged to review the

3

complaint to determine whether any claims are frivolous, malicious, or fail to state a claim upon which relief may be granted. This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal, BU.S.B, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v.

4

Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id., at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id., at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than

5

conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id., at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the Court of Appeals has observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a

6

defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.'"

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied, 132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1950).

In considering whether a complaint fails to state a claim upon which relief may be granted the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically

7

attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment"). However, the court may not rely on other parts of the record in determining whether to dismiss a complaint or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure, which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations that

are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

Judged against these legal guideposts, as discussed below, this amended complaint still fails as a matter of law and will be dismissed.

### B. This Complaint Will Be Dismissed

#### 1. The Complaint Violates Rule 8.

At the outset, dismissal of this complaint is warranted because this pleading still fails to comply with Rule 8's basic injunction that, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." It is well-settled that: "[t]he Federal Rules of Civil Procedure require that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed.R.Civ.P. 8(a)(2), and that each averment be 'concise, and direct.'" Scibelli v. Lebanon County, 219 F. App=x 221, 222 (3d Cir. 2007) (citing Fed.R.Civ.P. 8(e)(1)). Thus, when a complaint is "illegible or incomprehensible", id., or when a complaint "is not only of an unwieldy length, but it is also largely unintelligible", Stephanatos v. Cohen, 236 F. App=x 785, 787 (3d Cir. 2007), an order dismissing a complaint under Rule 8 is clearly appropriate. See, e.g., Mincy v. Klem, 303 F.App=x 106 (3d Cir. 2008); Rhett v. New Jersey State Superior Court, 260 F.App=x 513 (3d Cir. 2008); Stephanatos, 236 F.App=x at 787; Scibelli, 219 F.App=x at 222;  Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448,

450 n. 1 (5th Cir. 2005).

Dismissal under Rule 8 is also proper when a complaint "left the defendants having to guess what of the many things discussed constituted [a cause of action]," Binsack v. Lackawanna County Prison, 438 F. App=x 158 (3d Cir. 2011), or when the complaint is so "rambling and unclear" as to defy response. Tillio v. Spiess, 441 F.App=x 109 (3d Cir. 2011). Similarly, dismissal is appropriate in "those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. at 110 (quoting Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir.1995) (quotations omitted); see also Tillio v. Northland Grp. Inc., 456 F. App'x 78, 79 (3d Cir. 2012). Further, a complaint may be dismissed under Rule 8 when the pleading is simply illegible and cannot be understood. See, e.g., Radin v. Jersey City Medical Center, 375 F. App=x 205 (3d Cir. 2010); Moss v. United States, 329 F. App'x 335 (3d Cir. 2009) (dismissing illegible complaint); Earnest v. Ling, 140 F. App=x 431 (3d Cir. 2005) (dismissing complaint where "complaint fails to clearly identify which parties [the plaintiff] seeks to sue"); Oneal v. U.S. Fed. Prob., CIV.A. 05-5509 (MLC), 2006 WL 758301 (D.N.J. Mar. 22, 2006) (dismissing complaint consisting of approximately 50 pages of mostly-illegible handwriting); Gearhart v. City of Philadelphia Police, CIV.A.06-0130, 2006 WL 446071 (E.D. Pa. Feb. 21, 2006) (dismissing illegible complaint).

In its current form, this amended complaint is still bereft of well-pleaded facts. Instead, the complaint seems to assume some prescience on the part of the reader, who must try to intuit facts from matters that are alluded to, but not provided to the Court. The failure to allege facts, but rather assume that we can surmise some facts, is fatal here. Simply put, this complaint in its current form often leaves "defendants having to guess what of the many things discussed constituted [a cause of action]." Binsack v. Lackawanna County Prison, 438 F. App'x 158 (3d Cir. 2011). Therefore Rule 8 calls for dismissal of the complaint in its entirety.

## 2. Todd Has Not Stated a Plausible Claim for Relief under the ADA.

Additionally, as pleaded, Todd's ADA claims fail as a matter of law. In this regard, Todd's allegations are unusual and appear to stem from a September 2024 criminal case in which Todd alleges he was a victim. Todd complains that the victim services he received in this state case were inadequate and violated his rights under the ADA. However, notably none of the organizations and entities that were involved in this initial state criminal case are named as defendants in this lawsuit.[2] Instead of now suing those who were allegedly directly involved in these matters, Todd has elected to lodge claims against other organizations who had no involvement in this

---

[2] We note that in Todd v. Derry Township, 1:25-cv-435 it appears that the plaintiff lodged claims against the entities involved in this underlying state case but those claims—including ADA claims—were dismissed.

11

underlying state case beyond declining to advocate on Todd's behalf in that case. For example, Todd's ADA retaliation claims against the PHRC and DRP consist of little more than the allegations that the "Defendants punished me for asserting ADA rights by refusing to act" in response to his complaints about the handling of this state criminal case. (Doc. 17, at 3). Likewise, Todd alleges, without further well-pleaded facts, that DRP's refusal to help him in lodging complaints against others denied him services guaranteed by the ADA. Thus, at most, Todd alleges that these entities failed to intervene on his behalf with respect to some ADA grievances he had against other institutions and individuals. He then attempts to convert the discretionary decision of these organizations to refrain from advocating on his behalf into a separate form of retaliation.

In our view, this is a bridge too far. ADA retaliation claims typically arise in an employment context. In this setting, a retaliation claim generally entails three essential elements:

> To establish a prima facie case of retaliation under the ADA, a plaintiff must show (1) protected employee activity, (2) adverse action by the employer either after or contemporaneous with the employee's protected activity, and (3) a causal connection between the employee's protected activity and the employer's adverse action

Yanoski v. Silgan White Cap Americas, LLC, 179 F. Supp. 3d 413, 425 (M.D. Pa. 2016).

In the instant case, while Todd has arguably asserted that he engaged in some form of protected activity, his pleading otherwise fails to state a valid ADA claim. At the outset, Todd has not sufficiently alleged that these defendants engaged in an adverse action targeting him. On this score, "[a]n 'adverse . . . action' in this context is an action that 'well might have dissuaded a reasonable [person] from making or supporting a charge of discrimination.'" Mercer v. Se. Pennsylvania Transit Auth., 26 F. Supp. 3d 432, 447 (E.D. Pa. 2014), aff'd sub nom. Mercer v. SEPTA, 608 F. App'x 60 (3d Cir. 2015).

In this case, Todd's pleading indicates that he had, in fact, already lodged complaints regarding the conduct of the underlying state criminal case when he contacted DRP and PHRC attempting to enlist their aid in advocating on his behalf. Therefore, he was not dissuaded by these defendants in any way from alleging that he had been discriminated against in this separate state criminal case. Moreover, the discretionary decision of DRP and PHRC to decline to intervene on his behalf in this state case simply was not the type of adverse action contemplated by the ADA. Nothing about these decisions to decline to intervene on the plaintiff's behalf placed Todd in a more adverse situation. Instead, his status remained unchanged: He was a *pro se* complainant voicing a grievance regarding the handling of a state criminal case.

Further, Todd's amended complaint simply does not allege well-pleaded facts

13

which support the third crucial element of an ADA retaliation claim—causation. This element typically can be pleaded and proven in one of two ways. In this setting:

> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism couple with timing to establish a causal link. See Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997). In the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of fact should infer causation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

On this score "[t]he mere fact that adverse . . . action occurs after [a protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997), abrogated on other grounds by Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L.Ed.2d 345 (2006). However, the Third Circuit has stated that if the timing of the allegedly retaliatory action is " 'unusually suggestive' of retaliatory motive" a causal link may be inferred. Krouse, 126 F.3d at 503 (citing Robinson, 120 F.3d at 1302). In some cases, the appeals court has found a period of two days demonstrated a causal link, Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989), but has found that a period of two months was not. See Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004).

Here, the events which Todd seeks to stitch together into a retaliation claim are separated by months and involve different and distinct actors. Without further well-pleaded facts the unusually suggestive temporal proximity which is essential to a retaliation claim is simply lacking here. Therefore, these ADA claims also fail as a matter of law and will be dismissed.

### 3. The Eleventh Amendment Shields the PHRC from Liability under 42 U.S.C. §1983.

Further, to the extent that Todd is trying to lodge a §1983 civil rights claim against the PHRC an agency of state government, this claim fails for at least two reasons. As we have previously explained in a similar case:

> First, as a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the ... States....", U. S. Const. Amend XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and therefore also is barred by the Eleventh Amendment. Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989).
>
> Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996). Under the Eleventh Amendment, the Commonwealth's immunity exists as a matter of law unless waived by the state, or expressly and unequivocally abrogated by Congress. Congress has not expressly abrogated this constitutional immunity with respect to federal civil rights lawsuits against the Commonwealth of Pennsylvania, and the Commonwealth clearly has

15

not waived its immunity. Quite the contrary, the Commonwealth has specifically by statute invoked its Eleventh Amendment immunity in 42 Pa. Cons. Stat. § 8521(b). Thus, while Pennsylvania has, by law, waived sovereign immunity in limited categories of cases brought against the Commonwealth in state court, see 42 Pa. Cons. Stat. § 8522, Section 8521(b) flatly states that: "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." 42 Pa. Cons. Stat. § 8521(b).

The constitutional protections afforded to the states under the Eleventh Amendment also expressly apply to claims involving the PHRC. As the Third Circuit has observed:

> The Eleventh Amendment provides a state with immunity "from liability for damages in a suit brought in federal court by one of its own citizens." Dellmuth v. Muth, 491 U.S. 223, 229 n. 2, 109 S.Ct. 2397, 105 L.Ed.2d 181 (1989). This immunity extends to state agencies. See MCI Telecomm. Corp. v. Bell Atl. Pa., 271 F.3d 491, 503 (3d Cir. 2001). While states can waive their Eleventh Amendment immunity, see id., Pennsylvania has not done so, see 42 Pa. Cons.Stat. § 8521(b). The PHRC is an administrative commission within the executive department of the Commonwealth of Pennsylvania and, as such, it shares in the Commonwealth's Eleventh Amendment immunity. See 43 Pa. Stat. Ann. §§ 956–7.

Opoku v. Educ. Comm'n for Foreign Med. Graduates, 574 F. App'x 197, 201 (3d Cir. 2014).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Moreover, beyond these constitutional considerations, as a matter of statutory interpretation, the plaintiff cannot bring a damages action against the PHRC . . ., as a state agency or arm of state government since it is also well-settled that a state, a state agency, or a state official acting in an official capacity is not a "person" within the meaning of 42 U.S.C. § 1983, the principal federal civil rights statute. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 (1989). In sum, [the plaintiff's] federal

> civil rights claims for . . . damages against the PHRC, . . . [is] barred both by the Eleventh Amendment to the United States Constitution and by cases construing the federal civil rights statute, 42 U.S.C. § 1983. Therefore, since the PHRC . . . cannot be sued in this fashion in federal court, this complaint should be dismissed.

Ally v. PHRC, No. 1:19-CV-1268, 2019 WL 3933661, at *4–5 (M.D. Pa. July 23, 2019), report and recommendation adopted, No. 1:19-CV-1268, 2019 WL 3928790 (M.D. Pa. Aug. 19, 2019). Therefore, this state agency is entitled to be dismissed from this lawsuit.

### 4. The Amended Complaint Will Be Dismissed with Prejudice.

We previously recognized that in civil rights cases, *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Therefore, acting out of a surfeit of caution, we afforded Todd leave to amend his initial complaint, but to no avail. This amended complaint still fails to state a claim upon which relief may be granted and it appears that no further form of artful pleading may save this this complaint. Accordingly, the amended complaint will be dismissed with prejudice.

### III. Conclusion

Accordingly, for the foregoing reasons, the plaintiff's complaint is dismissed

with prejudice and the plaintiff's motion to transmit information to various federal agencies, (Doc. 24), is DENIED.

An appropriate order follows.

<u>S/Martin C. Carlson</u>
Martin C. Carlson
United States Magistrate Judge

DATED: October 14, 2025